CITY OF CLEVELAND, Appellant,

v.

SHIELDS, Appellee.

[Cite as *Cleveland v. Shields* (1995), 105 Ohio App.3d 118.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67168.

Decided July 3, 1995.

*Carolyn Watts Allen,* Chief Prosecuting Attorney, and *Lisa M. Herbert,* Assistant Law Director, for appellant.

*Schreiber, Rossman & Assoc. Co., L.P.A.,* and *Alan C. Rossman,* for appellee.

SPELLACY, Presiding Judge.

Plaintiff-appellant, the city of Cleveland ("Cleveland"), appeals the granting of defendant-appellee Annett Shields's motion to dismiss. Shields had been charged with resisting arrest.

Cleveland assigns the following error upon appeal:

"The trial court erred by granting appellee's motion to dismiss based on a warrantless entry into a home to make a felony arrest when exigent circumstances justified the entry."

Finding the assignment of error to have merit, the judgment of the trial court is reversed.

I

On February 5, 1994, Mark Mazur, a Cleveland Police Officer assigned to the narcotics unit, was driving an unmarked police vehicle with two other officers. All were in plain clothes. The officers' vehicle came to a stop sign at the same time as another automobile. Mazur looked into the other vehicle and clearly saw a bag of what appeared to be cocaine being handed between the two occupants. The police vehicle's blue strobe lights were activated. The officers exited their automobile while identifying themselves as police officers.

The suspect driver put the car into reverse and sped away. The police pursued in their vehicle. The suspect lost control of the automobile, striking another vehicle. The two male suspects jumped out of their car and began to run with the officers in pursuit on foot. Mazur and Officer Timothy Gaertner chased one of the suspects, later identified as Nicarlo Williams. The officers saw Williams throw down the bag of suspected cocaine, which was retrieved by another member of the narcotics squad.

The pursuit lasted approximately four minutes as Williams went over several fences and through a courtyard. The officers kept yelling "police" and "freeze." Gaertner attempted to tackle Williams. The chase eventually led to the doorway of an apartment building. Williams was banging on the door as the officers approached and asked him to come closer. Instead, Williams entered the building and slammed the door in the faces of the officers. Mazur knocked on the steel door, which was opened by an older woman. The officers identified themselves and the woman stepped back, allowing them to enter. The officers inquired where Williams had run to and were told by the woman that he had gone upstairs.

The officers went up the stairs, where they found and detained Williams. While taking Williams down the stairs, the officers encountered defendant Shields on the landing of the stairs. Shields managed to place herself between Williams and the officers, standing with arms spread and using her body to cover that of Williams's. Shields screamed at the officers, "Who are you and what are you doing in my house?" She repeated this several times, even though the officers identified themselves. Shields repeatedly was told to stand away from Williams,

as he was under arrest. She refused to do so and became verbally combative and abusive. Shields then was placed under arrest.

Shields was charged with resisting arrest in violation of Cleveland Codified Ordinance 615.08. Before trial was to begin, Shields filed a motion to dismiss. The trial court held a hearing and granted the motion. The trial court found no exigent circumstances permitting a warrantless entry into the apartment. The trial court found there was no danger of losing evidence, as the cocaine already had been abandoned, and did not regard the drug offense as being of a dangerous nature placing the officers in fear of their safety or that of others.

## II

In its assignment of error, Cleveland argues that the trial court erred by granting Shields's motion to dismiss. Cleveland contends that exigent circumstances existed which justified the warrantless entry into the apartment. Cleveland maintains that the officers were in hot pursuit of a suspect and needed to act quickly both for safety reasons and to prevent the possibility of the destruction of evidence. Cleveland asserts that the pursuit of Williams was continuous from the time the alleged crime was witnessed until Williams entered the apartment. The entry was lawful under the hot-pursuit doctrine.

Absent probable cause and exigent circumstances, warrantless arrests in the home are prohibited by the Fourth Amendment. *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. Such warrantless searches are " '*per se* unreasonable * *. * subject only to a few specifically established and well-delineated exceptions.' " *Mincey v. Arizona* (1978), 437 U.S. 385, 390, 98 S.Ct. 2408, 2412, 57 L.Ed.2d 290, 298–299. The four exceptions to the warrant requirement justifying a warrantless search of a home are "(1) an emergency situation, (2) search incident to an arrest, (3) 'hot pursuit' and (4) easily destroyed or removed evidence." *State v. Cheers* (1992), 79 Ohio App.3d 322, 325, 607 N.E.2d 115, 117.

In *United States v. Santana* (1976), 427 U.S. 38, 96 S.Ct. 2406, 49 L.Ed.2d 300, the police went to Santana's home after receiving information that she was in possession of marked money which had been used to purchase heroin. Santana was standing in her doorway, but retreated into the vestibule as the police approached. The officers followed through the open door and caught her, while she still was in the vestibule. The court applied the hot-pursuit doctrine and held that Santana was in a public place when the police first sought to arrest her and that she could not thwart an otherwise proper arrest by retreating into her house. A suspect may not defeat an arrest which was set in motion in a public

place by escaping to a private place. 427 U.S. at 43, 96 S.Ct. at 2410, 49 L.Ed.2d at 305–306.

In *Alto v. Chicago* (N.D.Ill.1994), 863 F.Supp. 658, Alto allegedly had swung a wooden two-by-four at a Chicago police officer. Two weeks later, Alto was spotted in a park. He ran from the police officers upon their approach and was pursued by the officers. Alto entered a house and was followed inside by an officer. The court held that "where probable cause exists and exigent circumstances make it reasonable for police to proceed into a home without a warrant, there is no constitutional violation." *Id.* at 661. "An officer conducting an otherwise proper arrest in public need not abandon his efforts simply because the suspect flees into his own house." *Id.*

In the instant case, the police officers were attempting to arrest Williams for a felony offense. The gravity of the underlying offense should be considered when deciding whether exigent circumstances exist. The exigent circumstances exception is limited to the investigation of serious crimes; misdemeanors are excluded. *Welsh v. Wisconsin* (1984), 466 U.S. 740, 752, 104 S.Ct. 2091, 2098–2099, 80 L.Ed.2d 732, 744–745. The police were in pursuit of Williams because they observed his involvement in a serious drug offense.

In *Welsh, supra,* the court was not convinced that hot pursuit was involved as there was no immediate or continuous pursuit of the defendant from the scene of the crime. *Id.,* 466 U.S. at 753, 104 S.Ct. at 2099, 80 L.Ed.2d at 745. This is not what occurred in the instant case. Williams was pursued from the scene of the crime. The police attempted to tackle Williams and chased him over fences and through a courtyard for a period of four minutes. The chase was continuous and Williams was never out of sight of the officers until he slammed the apartment door in their faces. The pursuit of Williams was immediate and continuous. The officers first attempted to arrest Williams in a public place and followed Williams to a private place in order to carry out that arrest.

The immediate, continuous chase of Williams falls within the hot-pursuit exception to the warrant requirement of the Fourth Amendment. The trial court erred in granting Shields's motion to dismiss.

Cleveland's assignment of error is sustained.

The judgment of the Cleveland Municipal Court is reversed and the cause is remanded.

*Judgment reversed*
*and cause remanded.*

NUGENT J., concurs.

BLACKMON, J., concurs in judgment.

PATRICIA ANN BLACKMON, Judge, concurring.

I concur in the judgment of the majority, but write separately for the following reasons:

There is no provision in Ohio's Rules of Criminal Procedure for a motion to dismiss a criminal case founded upon the lack of probable cause. *State v. Hartley* (1988), 51 Ohio App.3d 47, 48, 554 N.E.2d 950, 951. The proper remedy for Fourth Amendment violations is suppression of the evidence, not dismissal of the charges. *Blanchester v. Hester* (1992), 81 Ohio App.3d 815, 820, 612 N.E.2d 412, 415. " 'An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.' " *Id.* at 820, 612 N.E.2d at 415, quoting *United States v. Crews* (1980), 445 U.S. 463, 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537, 547. Furthermore, there is no provision for summary judgment or a pretrial motion challenging the legal sufficiency of the evidence in the Rules of Criminal Procedure. *State v. Varner* (1991), 81 Ohio App.3d 85, 86, 610 N.E.2d 476, 477; *State v. McNamee* (1984), 17 Ohio App.3d 175, 17 OBR 306, 478 N.E.2d 843, at the syllabus.

In the present case, Annett Shields filed a pretrial motion to dismiss the charge of resisting arrest. She argued that the arrest of Williams and her own arrest were unconstitutional because the police lacked probable cause to enter her home without first obtaining a search warrant. Because Shields challenged whether Cleveland had probable cause, her pretrial motion to dismiss should have been denied.

"The determination of whether * * * probable cause exists is the very function of the trial." *Hartley*, 51 Ohio App.3d at 48, 554 N.E.2d at 951. The prosecution in a resisting-arrest case must prove beyond a reasonable doubt all of the essential elements of resisting arrest, including the lawfulness of the underlying arrest. See *Strongsville v. Waiwood* (1989), 62 Ohio App.3d 521, 524, 577 N.E.2d 63, 64–65, citing *Hoover v. Garfield Heights Municipal Court* (C.A.6, 1986), 802 F.2d 168. An appropriate means of raising the unlawfulness of the underlying arrest in a resisting-arrest trial is a motion for judgment of acquittal under Crim.R. 29. Ultimately, whether the city of Cleveland can prove beyond a reasonable doubt that the arrest of Nicarlo Williams was lawful as an element of the resisting arrest charge against Annett Shields is a question of fact.

Accordingly, this case must be reversed and remanded for trial.